# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NATURE COAST COLLECTIONS, INC, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 06 C 7195 |
| v. | ) ) | |
| CONSORTIUM SERVICE MANAGEMENT GROUP, INC., et al., | ) ) ) ) | Judge Robert M. Dow, Jr. |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court are two motions filed by Defendants Consortium Service Management Group, Inc. ("CSMG"), Gordon W. Allison ("Allison"), vice-president of CSMG, and Donald S. Robbins ("Robbins"), president and chairman of CSMG (collectively, "Defendants"). The first motion [96] seeks summary judgment against Plaintiff, Nature Coast Collections, Inc. ("Nature Coast"); the second motion [129] asks the Court to strike the affidavit of Simon Shaw submitted by Plaintiff along with its initial response to Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion for summary judgment [96] is denied and Defendants' motion to strike the Shaw affidavit [129] is granted.

**I.    Background**

In ruling on a motion for summary judgment, the Court takes the relevant facts from the parties' respective Local Rule 56.1 ("L.R. 56.1") statements. The Court resolves all genuine factual ambiguities in Plaintiff's favor (see *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928

(7th Cir. 2004)), and takes no position on whose version of disputed factual matters is correct.[1] Although the parties' Local Rule 56.1 statements reflect a great deal of disputed matters, most of those disputed matters have no bearing on the legal issues that the Court must consider in ruling on Defendants' motion for summary judgment. Thus, the facts that are relevant to the motion before the Court are largely undisputed.[2]

Defendants operate as a technology company engaged in owning, developing, patenting, managing, licensing, and marketing technologies developed in Ukraine and other Eastern European countries. (Def. SOF ¶ 5.) In early 2001, Defendants sought financing for a carbon dioxide separator at a landfill in Texas for the purpose of commercially exploiting the methane gas produced by the landfill. (*Id*. at ¶ 10.) CSMG engaged Global Services Group LLC ("Global") to assist in securing the necessary funding for the project. (*Id*. at ¶ 11.)

Pursuant to Global's instructions, the four Notes that are the subject of this lawsuit were executed by Robbins, on behalf of CSMG, in favor of Stonegate Management, Ltd. ("Stonegate"), a Costa Rican trust company owned, managed, and operated by Simon Shaw

---

[1] L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See*, e.g., Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See*, e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Finally, the Court disregards any additional statements of fact contained in a party's response brief rather than in its statement of additional facts. See*, e.g., Malec,* 191 F.R.D. at 584 (citing *Midwest Imports,* 71 F.3d at 1317).

[2] Because the Shaw Affidavit is not referenced in either Plaintiff's amended statement of additional facts or Plaintiff's amended memorandum in opposition to Defendants' motion for summary judgment, the affidavit is irrelevant to the consideration of the motion before the Court. Accordingly, Defendants' motion to strike [129] is granted and the Shaw affidavit is stricken without prejudice.

("Shaw"). (Def. SOF ¶¶ 13-28.) The first promissory note was made in May 2001 in connection with a $115,000 wire transfer received by CSMG. (Def. SOF ¶ 13.) CSMG made and delivered to Global a promissory note in favor of "Stonegate Management Ltd." in such amount, payable, with interest, on May 20, 2002. (*Id.*) The second promissory note was made in July 2001 in connection with a $362,000 wire transfer received by CSMG. (Def. SOF ¶ 14.) CSMG made and delivered to Global a promissory note in favor of "Stonegate Management Ltd." in such amount, payable, with interest, on July 2, 2002. (*Id.*) The third promissory note was made in August 2001 in connection with a $53,000 wire transfer received by CSMG. (Def. SOF ¶ 16.) CSMG made and delivered to Global a promissory note in favor of "Stonegate Management Ltd." in such amount, payable, with interest, on August 20, 2002. (*Id.*) The fourth promissory note was made in connection to a $100,000 bridge loan that Global had arranged and CSMG had received in January 2000 from an entity known as "Olympus CR." (Def. SOF ¶ 28.) On or about January 1, 2002, CSMG executed a promissory note in favor of "Stonegate Ltd."[3] in the principal amount of $100,000, payable with interest on September 30, 2002. (*Id.*) Each of the four Notes contains a choice-of-law provision which states: "this note shall take effect as a sealed instrument and shall be construed, governed and enforced in accordance with the laws of the state first appearing at the head of the note." The state first appearing at the head of all four Notes at issue is Texas.

There is no dispute that Defendants executed and issued the four Notes and delivered them to Global – the entity that brought Defendants and Stonegate together in connection with the financing of Defendants' business venture. (Def. SOF ¶¶ 13-28.) It also is undisputed that

---

[3] Defendants agree that despite the fact that three of the notes were payable to "Stonegate Management Ltd." and the fourth was payable to "Stonegate Ltd.," the intent of the maker, Robbins on behalf of CSMG, was to make the notes payable to the same Costa Rican company. "The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person." Tex. Bus. & Com. Ann. § 3.110 (a).

3

the Notes are negotiable instruments governed by UCC Article 3. See Tex. Bus. & Com. Ann. § 3.104(a).

On August 29, 2005, Shaw, acting on behalf of Stonegate, authored a document purporting to assign to Nature Coast "any and all rights of any kind it has relative to [Defendants] in connection with the four (4) loans in the original principal amounts of: May 20, 2002/$115,000, July 2, 2002/$362,000, August 20, 2002/$53,000, and September 30, 2002/$100,000" in consideration of $10. (Compl., Ex. A.) On June 30, 2006 Nature Coast initiated an action [42-2] to enforce the four Notes. Nature Coast does not have possession of all of the Notes[4]; it contends that the missing Notes were lost, stolen or destroyed while in the possession of the original owners' agent. In their motion for summary judgment, Defendants contend that: (i) Nature Coast is not entitled to enforce the Notes against CSMG under the applicable provisions of the Uniform Commercial Code ("UCC"); (ii) the assignment of "rights" from Stonegate to Nature Coast is a sham and invalid; (iii) Nature Coast does not have the right to enforce the Notes against the Defendants; and (iv) that Nature Coast cannot recover on the Notes under the equitable theory of promissory estoppel.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[4] In its response to Defendants' statement of facts, Plaintiff admitted that it does not have possession of the Notes. Pl. Resp. Def. SOF ¶ 52. However, Plaintiff subsequently asserted that at least one of the Notes had been located and is in the possession of its attorneys and indicated that it would "be filing a motion to amend its prior admission that it is not in possession of the Note, and the admissions related thereto." Pl. Mem. at 10 n. 3. No such motion has been filed. Nevertheless, in view of the UCC analysis below, whether Plaintiff has possession of one or more of the Notes is immaterial to the disposition of the motion for summary judgment, for there is a triable issue of fact as to whether Plaintiff may enforce its asserted rights under the Notes even if it lacks actual physical possession of them.

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

### B. UCC Arguments

Defendants seek summary judgment on Counts I, III, V, and VII of Nature Coast's complaint on the ground that Nature Coast cannot satisfy the requirements for enforcement of the Notes under the relevant provisions of the UCC. Primarily, they allege that Plaintiff is not a "person entitled to enforce" the Notes that are the subject of this lawsuit.

1. **Texas UCC 3.309**

The initial question before the Court is whether an assignee may acquire a right to enforce a lost, destroyed, or stolen promissory note that never was in the physical possession of the assignor. The Court concludes that Texas law allows for enforcement by an assignee in such situations.

According to Defendants, a majority of courts that have analyzed the assignment of lost notes under UCC 3-309 have held that a plaintiff suing on a note "must have been both in possession of the note when it was lost and entitled to enforce the note when it was lost." *Atl. Nat'l Trust, LLC v. McNamee*, 984 So. 2d 375, 379 (Ala. 2007) (quoting *Dennis Joslin Co. v. Robinson Broadcasting Corp.*, 977 F. Supp. 491, 495 (D.D.C. 1997).[5] To be sure, it appears that *Dennis Joslin Co.* "is the leading case standing for the proposition that the assignee of a lost instrument [that] never possessed the instrument is unable to enforce the instrument." *Id.* at 379 (Lyons, C.J., concurring opinion). And, it is also true that, prior to 2005, many Texas courts followed the interpretation of UCC § 3-309 adopted in *Dennis Joslin Co.* See, *e.g.*, *Western Nat'l Bank v. Rives*, 927 S.W.2d 681, 685 (Tex. App. 1996); *Geiselman v. Cramer Fin. Group, Inc.*, 965 S.W.2d 532, 539 (Tex. App. 1997); *Southeast Inv., Inc. v. Clade*, 1999 WL 476865, at *2 (N.D. Tex. July 7, 1999).

However, the *Dennis Joslin Co.* decision triggered an amendment to the UCC that specifically was designed to produce a contrary result. *Atl. Nat'l Trust,* 984 So.2d at 379. The current version in Texas UCC § 3.309, adopted in 2005, provides in pertinent part:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if: (1) the person seeking to enforce the instrument: (A) was entitled to

---

[5] In *Atlantic National Trust*, the Alabama Supreme Court considered the certified question of whether the right to enforce a lost promissory note that was lost while in the possession of the assignor can vest in the assignee of the note. Because the Texas courts have yet to decide a case under the amended provision, this Court looks to the Alabama decision for guidance in interpreting that provision.

> enforce the instrument when loss of possession occurred; or (B) *has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred.*

Tex. Bus. & Com. Ann. § 3.309 (emphasis added). The official UCC comment for this provision explains that:

> Subsection (a) is intended to reject the result in *Dennis Joslin Co. v. Robinson Broadcasting Corp.*, 977 F. Supp. 491 (D.D.C. 1997). A transferee of a lost instrument need prove only that its *transferor* was entitled to enforce, *not* that the transferee was in possession at the time the instrument was lost.

Official Comment to UCC § 3-309 (emphasis added).

Defendants argue that Nature Coast is "not entitled to enforce the notes because [Nature Coast] has not alleged that the notes were lost, stolen, or destroyed after coming into its possession." That argument overlooks the plain language of the amended Section 3.309 of the Texas UCC, which states that a party not in possession of a negotiable instrument nonetheless may be entitled to enforce the instrument if that party "has directly or indirectly acquired ownership of the instruments from a person who was entitled to enforce the instrument when loss of possession occurred." Tex. Bus. & Com. Ann. § 3.309(a)(1)(B). When Texas adopted that language in 2005, it discarded the prior version that permitted enforcement of a negotiable instrument only by a person who was in possession of the instrument and entitled to enforce it when the loss of possession occurred. See also Tex. Gov't. Ann. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). Under the amended version of Section 3.309, Texas specifically recognizes the right of an assignee – here, Nature Coast – to enforce Notes that were acquired from an assignor – here, Stonegate – who was entitled to enforce the instrument when the loss of possession occurred.

## 2. Texas UCC 3.301 Analysis

The next question raised by Defendants' motion is whether Stonegate was entitled to enforce the Notes when the loss of possession occurred. Defendants assert that Stonegate does not qualify as a "holder" under Texas UCC § 3.301 because it never was in possession of the Notes. And, following from that assertion, Defendants further contend that Stonegate's assignee, Nature Coast, is not entitled to enforce payment under the Notes, because it did not acquire ownership of the instrument from a "person who was entitled to enforce the instrument" when loss of possession occurred.

Both parties agree that the Notes are negotiable instruments governed by applicable provisions of the UCC. Article 3 of the Texas UCC defines a "person entitled to enforce" an instrument as one who is "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d)." Tex. Bus. & Com. Ann. § 3.301. A "holder" means the person "in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* at § 1.201.

Because "possession" is not defined in the text of the UCC, the Court must look outside the UCC to shed light on what it means to be in "possession" of a negotiable instrument. See, *e.g.*, *Elizarraras v. Bank of El Paso*, 631 F.2d 366, 376 (5th Cir. 1980) ("Where the UCC does not address an issue, one should refer to the common law for guidance"); Tex. Bus. & Com. Ann. § 1.103 (b) ("Unless displaced by the particular provisions of [the Uniform Commercial Code], the principles of law and equity * * * supplement its provisions"). In regard to promissory notes, Texas law recognizes "two types of possession: actual and constructive."

*Bronco Printer Serv. & Supplies, Inc. v. Byte Laserecharge, Inc.*, 2005 Tex. App. LEXIS 1540 (Tex. App. Feb. 24, 2005). Constructive possession exists when a person does not have actual physical possession of something, but instead has the "intent and capability to maintain control and dominion over it." *Id.*; see also *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 29 (Tex. 1993) ("The phrase, possession, custody or control * * * includes not only actual physical possession, but constructive possession, and the right to obtain possession from a third party, such as an *agent* or *representative*." (emphasis added)).

In this case, Defendants acknowledge that they made and delivered to Global four promissory Notes in favor of Stonegate. (Def. SOF ¶¶ 13, 14, 16, 28.) As noted above, the Court assumes for purposes of this opinion that Stonegate never acquired actual physical possession of the Notes. But even operating under that assumption, there is sufficient evidence to give rise to a triable issue of fact as to whether Stonegate obtained *constructive possession* when Robbins, acting on behalf of CSMG, signed and delivered actual physical possession of the Notes to Global, because Global at least arguably was acting as Stonegate's agent in facilitating the delivery of funds for Defendants' business venture. A trier of fact plausibly could find that Stonegate had the "intent and capability to maintain control and dominion over the note[s]" through Global, as required to establish possession under Section 3.301 of the Texas UCC. See *Mehan v. Wamco XXVIII, Ltd.*, 138 S.W.3d 415, 418 (Tex. App. 2004).

### C. Assignment Arguments

Defendants next argue that the purported assignment of "rights" from Stonegate to Nature Coast is invalid. On August 29, 2005, Stonegate executed a document in which it purported to transfer to Nature Coast "any and all rights of any kind" that Stonegate possessed with respect to CSMG, Robbins, and Allison in connection with the four promissory notes totaling $630,000 in

consideration of $10. Defendants argue that (i) the assignment was a sham and (ii) the language used in the assignment is insufficient to convey the Notes to Nature Coast in any event.

### 1. Sham Analysis

Defendants' "sham transfer" argument draws on the factors cited in a Second Circuit case to determine whether an assignment has been made "in an effort to obtain diversity jurisdiction where none would otherwise exist." Def. Mem. at 8. In that case, the district court and the court of appeals construed and applied 28 U.S.C. § 1359, which "prohibits diversity jurisdiction from being collusively provided by assigning claims" and "mandates careful examination of transfers or assignments which might have the effect of creating federal jurisdiction." *Airlines Reporting Corp. v. S & N Travel, Inc.*, 857 F. Supp. 1043, 1047 (S.D.N.Y. 1994), *aff'd*, 58 F.3d 857 (2d Cir. 1995). Where a court reasonably suspects that a transfer may have been made for jurisdiction-creating purposes, it looks to the factors cited by Defendants in an effort to determine whether the plaintiff's "true motivation in acquiring the assignment" was to "gain[] a federal forum." *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 863-64 (2d Cir. 1995).

Defendants' "sham" argument is puzzling, because Defendants make no effort to establish that the transfer in this case was undertaken to create diversity jurisdiction. Indeed, in Defendants' own statement of material facts, they assert – and Plaintiff agrees – that the Court has jurisdiction over this matter "because there is complete diversity of citizenship" and the amount in controversy exceeds $75,000. (Def. SOF ¶ 9; Pl. Resp. Def. SOF ¶ 9.) Moreover, there appears to be no basis for questioning that view, for neither Nature Coast nor any of the Stonegate entities (to the extent that their citizenship may be relevant in view of the assignment) is a citizen of Texas or Oklahoma, as are Defendants.

Defendants' real grievance with the assignment appears not to be grounded in a jurisdictional concern. Rather, Defendants seem to take offense that the assignment was made for the sole purpose of allowing Nature Coast to collect the loans that the Stonegate entities made to Defendants, which Nature Coast then will turn over to Stonegate – facts that Plaintiff freely acknowledges (see Pl. Resp. Def. SOF ¶¶ 4, 50). But there is no suggestion in *Airlines Reporting* that such an assignment raises any "sham" concerns unless the assignment constitutes a jurisdictional ruse. To the contrary, the district court in *Airlines Reporting* noted that "[a]n assignee for the purposes of collection holds legal title to the debt and is a real party in interest, even though the assignee must account to the assignor for whatever is received in the action." 857 F. Supp. at 1047. In addition, the court observed that under Fed. R. Civ. P. 17(a), an action is properly maintained in the name of one serving in a representative capacity. *Id*. The Second Circuit likewise recognized that the plaintiff in *Airlines Reporting* was a "collection agent" that served as a "mere conduit for a remedy owing to others, advancing no specific interests of its own." *Airlines Reporting*, 58 F.3d at 862. The sole focus of the courts was whether the assignment simply attempted to create diversity jurisdiction where it could not legally exist, which the plaintiff-assignee candidly admitted was at least part of its motivation. *Id*. at 864. Because no such concerns are present here, the Court finds no basis for concluding as a matter of law that the assignment from Stonegate to Nature Coast was a "sham" and will now turn to its analysis of the assignment under general contract law.

2. **Particularity analysis**

An assignment is defined simply as the voluntary transfer of a right from one party to another. See *Mobil Oil Corp. v. Texas Commerce Bank-Airline*, 813 S.W.2d 607, 609 (Tex. App. 1991); see also Restatement (Second) of Contracts § 317(1) (1981) ("An assignment of a

11

right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished * * * and the assignee acquires a right to such performance"). Among the property rights that may be assigned are contract rights. *Cloughly v. NBC Bank-Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex. App. 1989).

Defendants cite a Seventh Circuit case, applying Illinois law, holding that "[an assignment] must describe the subject matter of the assignment with *sufficient particularity* to render it capable of identification." *Clarin Corp. v. Massachusetts Gen. Life Ins. Co.*, 44 F.3d 471, 476 (7th Cir. 1994) (emphasis added). Defendant's reliance upon the language in this case is misplaced for two reasons: (i) the applicable substantive law under which this Court must evaluate the sufficiency of the assignment is Texas law and (ii) the requirement of describing the subject matter of an assignment with "sufficient particularity" to render it capable of identification does not require precision.

Texas courts have held that "[w]hen construing a written assignment, we apply the rules of interpretation and construction applicable to contracts." *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 58 (Tex. App. 2005). The primary goal of the Court is to ascertain the parties' intentions. *Id.* To accomplish that objective, the Court must consider the entire writing in an effort "to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* at 58 (quoting *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951)). If a written assignment can be given a definite legal meaning, then it is not ambiguous and the court will construe the assignment as a matter of law. *Id.*; see also *Universal C.I.T. Credit Corp.,* 243 S.W.2d. at 157. "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker v. Coker*, 650 S.W.2d

391, 394 (Tex. 1983). When a contract contains an ambiguity, summary judgment is improper because the interpretation of the contract becomes a fact issue. *Id*.

Applying those principles, the Court concludes that Stonegate's description of what it assigned to Nature Coast – "any and all rights of any kind" it had in relation to the four Notes executed by Defendant – may not be unambiguously clear, but it is sufficiently precise to create a question for the trier of fact as to the intent of the parties with respect to the subject matter of the assignment. As noted above, Plaintiff acknowledges that Nature Coast was incorporated for the sole purpose of collecting the unpaid debt incurred by CSMG under the Notes and that the purported assignment was executed in furtherance of that purpose. Because a trier of fact reasonably could find that Stonegate assigned its rights – including its rights to enforce through Texas UCC 3.301(iii) and 3.309 – to Nature Coast, the Court must reject Defendants' argument that the purported assignment is invalid as a matter of law and must deny Defendants' motion for summary judgment on Plaintiff's claims for enforcement of the Notes under the UCC.

### D. Promissory Estoppel Argument

Defendants' final argument is that Plaintiff "cannot prove * * * any of the three necessary elements of a promissory estoppel claim." Mot. Summ. J. at 11. Promissory estoppel generally is a defensive doctrine that estops a promisor from denying the enforceability of the promise. *Trammel Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997); *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965). The requisites of promissory estoppel under Texas law are (i) a promise, (ii) foreseeability of reliance thereon by the promisor, and (iii) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); see also *Henry Schein v. Stromboe*, 102 S.W.3d 675, 686 (Tex. 2002).

Defendants' argument is not a model of clarity, nor is it very well supported in the way of case law. Still, there appear to be two bases (distinct from the arguments discussed above) for contending that Plaintiff's promissory estoppel claims fail as a matter of law. However, the Court is not persuaded by either of them.

First, Defendants lean heavily on an apparent typographical error in Plaintiff's complaint. In setting out its promissory estoppel claims, Plaintiff's complaint describes Defendants' transactions with Stonegate. Apparently through poor typing (and subsequent cutting and pasting), Plaintiff states that Defendants were "fully aware that *Nature Coast* was relying on [Defendants'] representation that the principal would be repaid with the agreed interest." See Pl. Compl. ¶¶ 11, 15, 19, 23. Defendants seize on this language and argue that Plaintiff's claims fail as a factual matter because Nature Coast did not enter the picture until Stonegate assigned its rights to Nature Coast.

Under Federal Rule of Civil Procedure 8(a)(2), Plaintiff need only put Defendant on notice of the nature of the claims against them. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Reading the complaint as a whole, it appears that Plaintiff's misstep was a mere typo and that Defendants received fair notice of the claims against them.[6] Indeed, Defendants' Summary Judgment Motion acknowledges that Plaintiff might have been asserting the rights that Nature Coast "acquired from Stonegate." Mot. Summ. J. at 11. That recognition by Defendants corroborates that they in fact *have* been given fair notice of the claim against them.

---

[6] Plaintiff argues in its memorandum of law in opposition to summary judgment [121] that the error was typographical. See *id*. at 13 n. 5. Defendants' reply memorandum [125] seems to acknowledge the nature of the error, but neither argues (i) that the nature of the error was a revelation nor (ii) that Defendants suffered any prejudice from that error. *Id*. at 9.

14

Defendants next argue that "Nature Coast is unable to prove that [Stonegate] had any 'rights' against CSMG [] to transfer." Mot. Summ. J. at 11. But the basis for that assertion is a disputed factual proposition (Pl. Resp. Def. SOF ¶ 19) about whether or not Stonegate and Defendants entered into a contract in the first place, making summary judgment plainly inappropriate. And to the extent that Defendants argue that a promissory estoppel claim somehow is "unassignable," that argument similarly fails under Texas law. *Farmers State Bank in Merkel v. Largent*, 132 S.W.2d 482, 485 (Tex. Civ. App. 1939) ("[A]n estoppel once having arisen inures to the benefit of those who afterwards purchase the instrument even with knowledge of the defenses."); *Thweat v. Jackson*, 838 S.W.2d 725, 727-28 (Tex. App. 1992) (assignee of a debt ordinarily obtains all of assignor's remedies); *Green v. Helmcamp*, 499 S.W.2d 730, 734 (Tex. Civ. App. 1979) (upholding a verdict for assignees on promissory estoppel theory).

Defendants' remaining promissory estoppel arguments essentially repeat their UCC and sham assignment arguments, as to which the Court already has determined that summary judgment is inappropriate.[7]

---

[7] In its response brief, Plaintiff suggests that it can restyle its "promissory estoppel" theory as one for unjust enrichment, restitution, and/or "assumpsit" at this late stage of the case. That argument is not well taken. Plaintiff appears to conflate the standards for ruling on a motion to dismiss – under which "it is not the exact theory that counts" – with the standards that apply on summary judgment. The Seventh Circuit clearly has held that a party "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997).

### III. Conclusion

For the reasons stated above, Defendants' motion for summary judgment [96] is denied. Defendants' motion to strike the Shaw affidavit [129] is granted and that affidavit is stricken without prejudice.

                                                                                                _____
Dated: February 23, 2009                                            Robert M. Dow, Jr.
                                                                                                United States District Judge